# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

FARRELL WAYNE CROSS,       )
                           )
          Petitioner,      )
                           )
v.                       )      Case No. 4:19-cv-03194-MTS
                           )
EILEEN RAMEY,           )
                           )
          Respondent.    )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Farrell Wayne Cross's Petition under 28 U.S.C. § 2254 for writ of habeas corpus. For the following reasons, Petitioner's § 2254 Petition is denied.

## I.  Procedural History

Farrell Wayne Cross ("Petitioner") is currently incarcerated at the Jefferson City Correctional Center ("JCCC"). On April 28, 2011, Petitioner was charged with one count of murder in the first degree. After a jury trial, Petitioner was found guilty and sentenced to life imprisonment without parole. On May 3, 2016, on direct appeal, the Missouri Court of Appeals for the Eastern District affirmed the trial court's ruling.[1] Doc. [16-5]. Petitioner raised points related to jurisdiction, the prosecutor's statements during trial and closing argument, the

---

[1] Following a change of venue, Petitioner was charged, tried, and convicted in St. Francois County Case 12SF-CR00126. Petitioner appealed the judgment of his convictions in Case Number ED102010. Petitioner sought post-conviction relief in St. Francois County Case Number 16SF-CC00232. Petitioner appealed the denial of post-conviction relief in Case Number ED106716.

prosecutor's use of leading questions, effectiveness of trial counsel, and the admission of evidence. *Id.* Petitioner then filed a motion under Missouri Supreme Court Rule 29.15 for post-conviction relief.[2] The appellate court also affirmed the denial of Petitioner's motion for post-conviction relief. While Petitioner's motion for post-conviction relief was pending, Petitioner filed a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254. *Cross v. Ramey*, 4:18-cv-01135-PLC, Doc. [1] (E.D. Mo. Jul. 10, 2018). The district court dismissed the action at that time because Petitioner failed to exhaust his available state remedies. *Id.* Doc. [14] (E.D. Mo. August 8, 2018). The district court also ordered that a certificate of appealability would not be issued. Petitioner appealed that decision. *Cross v. Ramey*, No. 18-2801 (8th Cir. Sept. 10, 2018). The Eighth Circuit denied Petitioner's application for a certificate of appealability, dismissing Petitioner's appeal. On December 3, 2019, Petitioner filed this action for habeas relief. Doc. [1].

## II.     Factual Background

On direct appeal, Petitioner did not contest the sufficiency of the evidence to support his conviction. Doc. [16-10] at 1. Petitioner and his ex-wife, ("Victim") were married in the early 1980s and had one daughter. In the mid-1980s, Petitioner and Victim divorced. Victim was awarded custody of their daughter. Petitioner was ordered to pay child support, which he refused to pay. In June 1989, the Missouri Division of Child Support Enforcement intercepted Petitioner's tax refund for past due child support. Shortly thereafter, Petitioner approached an acquaintance, Delbert Smith ("Smith"), and offered to kill Smith's wife if Smith killed Victim. Petitioner knew Smith's wife cheated on Smith while Smith was in prison. Petitioner told Smith he wanted Victim dead because he did not want to pay child support. Smith declined. In the following months, Petitioner solicited Smith and Smith's associate, Bobby Sharp (Sharp), several times to kill Victim.

---

[2] Further referred to as a Rule 29.15 motion.

In the meantime, Petitioner and his current wife, Becky Cross, were charged with assaulting Victim and her friend on June 24, 1990. A hearing was held in that matter on January 24, 1991, 10 days before Victim was murdered, at which a trial date was set for May 9, 1991. After the Victim's murder, the cases were dismissed.

In late 1990, Petitioner went to Smith's trailer and gave Smith $1,000 in cash. Smith declined the "contract" and, instead, delivered the money to Sharp at Petitioner's request. A week or two later, Petitioner gave Sharp a plastic bag of white powder, which Petitioner claimed contained cyanide. Shortly before Victim's murder, Petitioner was at a bar with his brother-in-law, Jimmy Jolliff (Jolliff). During a conversation, Petitioner pulled a small .22 caliber semi-automatic pistol from a waist holster and showed it to Jolliff.

On January 23, 1991, eleven days before Victim was murdered, Petitioner's wages were garnished for child support. Shortly after Victim's death, the garnishment order was terminated and the child support case closed. Petitioner frequently complained about visitation and child support to his friend, Tom Lortz (Lortz), who was experiencing similar issues with his ex-wife. About seven to ten days before Victim's murder, Petitioner and Lortz went to the Eagle's Lodge. Petitioner was complaining about Victim and offered to kill Lortz's ex-wife if Lortz would kill Victim. When Lortz stated he was not interested in having his ex-wife killed, Petitioner offered him $3,000. Lortz again declined.[3]

On the evening of February 2, 1991, Victim was at Perry's Pool Hall in Newburg, Missouri with her friends Catherine Light Warren (Warren), Brenda Nash (Nash), and Danna Yelton

---

[3] Lortz knew that Petitioner kept a .22 caliber semi-automatic pistol in his boot and a .22 caliber rifle in his van. A year or two after Victim's murder, Lortz and Petitioner were at the Eagle's Lodge with a group of people. At one point in the conversation, Petitioner looked directly at Lortz, grinned, and said, "Some people can get away with murder." Doc. [16-5] at 3.

(Yelton). Petitioner and Sharp were also at the Eagles Lodge. Victim told her friends she wanted to meet up with Petitioner that night and intended to proposition him. Victim then approached Petitioner and engaged in a long conversation. Victim bought Petitioner a beer using the garnished child support check she had received the day before. Petitioner said, "he didn't want the beer, he wanted the damn money." Doc. [16-5] at 3. Later that evening, Sharp purchased a can of beer for Victim. Sharp produced a bag containing white powder from his jacket and poured the contents of the bag into the beer. Sharp delivered the beer to Victim, returned the remaining powder to Petitioner, and left the bar. The bartender, Janet Daniels (Daniels), noticed the transaction and confronted Petitioner, and Petitioner told Daniels, "It [is] none of [your] damn business." *Id*. Victim then joined Warren and Nash outside. When Victim took a drink of the beer, she instantly spit it out. Victim said there was something in the beer and it tasted like strychnine. Warren and Nash each took a drink of the beer and also spit it out because the beer was gritty, foamy, bitter, and tasted like baking soda.

Around 11:00 p.m., Victim told Nash and Daniels she was going to Three Mile Road. As she was leaving, Petitioner told Victim that "if she did not quit fussing with him he wasn't going to meet her." *Id*. at 4. Victim then got in her car and headed out of town, going south on T Highway toward Three Mile Road. Approximately 30 to 45 minutes later, Petitioner left the bar, got into his Ford van,[4] and drove south on T Highway. Around 11:45 p.m., Tammy Foster and her mother, Barbara Foster, saw Petitioner's van turn onto Three Mile Road, where Victim was waiting in her car. Petitioner pulled the driver's side of his van next to the driver's side of Victim's car, as if they were going to meet. The next day, Victim's body was found lying next to her car, parked just off Three Mile Road, located in Mark Twain National Forest within Phelps County, Missouri. Victim

---

[4] Petitioner drove a 1977 Ford van with two-tone blue paint.

had a small caliber gunshot wound to her left temple. Police recovered from Victim's brain a .22 caliber hollow point, copper jacketed, bullet consistent with CCI .22 caliber ammunition.

On the day Victim's body was found, police went to Petitioner's residence and asked to see his guns. From his van, Petitioner retrieved a Winchester .22 caliber rifle, which was loaded with one round of CCI .22 caliber hollow point, copper jacketed ammunition. Investigators also recovered a loose round of CCI .22 caliber hollow point, copper jacketed ammunition from the floorboard of the van. From his trailer, Petitioner produced a Mossberg .22 caliber rifle, and a Ruger .22 caliber revolver that was loaded with six rounds of CCI .22 caliber hollow point, copper jacketed ammunition. Forensic evidence excluded the guns as the murder weapon.

On February 13, 1991, police arrested Petitioner for Victim's murder and he was detained in the Phelps County Jail.  Petitioner approached Murl Payne (Payne), an inmate who had recently litigated the reversal and remand of his own murder conviction, and asked Payne for legal advice. During their discussion, Petitioner admitted he ran into his ex-wife at a bar one night, followed her in his van, pulled over on a country road, and shot her. Petitioner said he left her body on a country road.  Petitioner said he shot his ex-wife because he was behind on child support, and she was "bugging" him about it. Petitioner told Payne he was concerned because two women named "Foster" drove by but stated they did not see him shoot his ex-wife.

### III.    Legal Standard

The proper standard of review for habeas relief is dependent upon whether the ground for relief was adjudicated on the merits in state court proceedings or procedurally barred.

## A.  Claims Reviewed on the Merits

When a claim has been adjudicated on the merits in state court proceedings, habeas relief

is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

though such relief is "limited and deferential." *Lonholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).

Under AEDPA, § 2254(d), habeas relief is only permissible if the state court's determination:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the Supreme Court of the
> United States; or
> (2) Resulted in a decision that was based on an unreasonable determination of the facts
> in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established Federal law if "it applies a rule

that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set

of facts that is materially indistinguishable from a decision of the [Supreme Court] but reaches a

different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). "Clearly established" Supreme Court

law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the

time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A decision involves an "unreasonable application" of clearly established law if "the state

court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner,"

*Brown*, 544 U.S. at 141, or "if the state court unreasonably extends a legal principle from [Supreme

Court] precedent to a new context where it should not apply or unreasonably refuses to extend that

principle to a new context where it should apply." *Williams*, 529 U.S. at 407. When reviewing

whether a state court decision involves an "unreasonable determination of facts," state court

findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the

presumption with clear and convincing evidence. *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); § 28 U.S.C. § 2254(e)(1).

## B.  Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. *Id*. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22–23, (2013) (quotation marks and citation omitted). Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*,

563 U.S. 170, 202 (2011)). First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. *Strickland*, 466 U.S. at 696. To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. *Id*. at 100-01. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. at 105. Furthermore, a state court's findings of fact, made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

## C. Procedurally Defaulted Claims

In Missouri, "a claim [must] be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir.1994) (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). To avoid default, a state inmate must have fairly presented his or her claims to the state court during direct appeal or in post-conviction proceedings. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997). If the claim was presented in a motion for post-conviction relief, the claim must also be advanced on appeal from the denial of that motion. *Id*. at

8

1150. A state prisoner who defaults on his federal claims in state court because of a state procedural rule is barred from federal habeas unless the prisoner can show cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 749 (1991). However, a ground that is procedurally barred may be reviewed on the merits if the petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750.

To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at...trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id*. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). To assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

### D.   Discussion

Petitioner asserts 12 grounds for relief in his Petition; however, some grounds have been designated part 1 and part 2, and many grounds are grouped together when applicable.

### A.   Ground 2: Petitioner claims that Missouri courts lacked jurisdiction to preside over Petitioner's case because the murder took place in the Mark Twain National Forest.

This claim was set forth and subsequently denied on direct appeal. Doc. [16-10] at 5-7. The appellate court's opinion asserted that the Missouri circuit courts have subject matter jurisdiction over criminal cases under Article V, Section 14 of the Missouri Constitution, and that

9

the State cannot grant subject matter jurisdiction to its courts to hear matters that federal law places under the "exclusive" jurisdiction of the federal courts. *State ex rel. Laughlin v. Bowersox*, 318 S.W.3d 695, 698 (Mo. banc 2010). The appellate court discovered this exact issue had been addressed in *Hankins v. State*, 766 S.W.2d 467 (Mo. App. S.D. 1989), and that ultimately pursuant to 40 U.S.C. § 255, the state of Missouri retained jurisdiction over the land and had the authority to prosecute this crime. *See Hankins*, 766 S.W.2d at 469-70. The decision of the appellate court was not contrary to, or involved an unreasonable application of clearly established Federal law. Ground 2 is denied. *See Hankins v. Delo*, 977 F.2d 396, 398 (8th Cir. 1992).

### B.  Grounds Concerning Murl Payne - Petitioner asserts five grounds in his Petition regarding Payne's trial testimony. Grounds 3, 4, 5, 8-2, and 11

At trial, Payne testified that Petitioner admitted he followed his ex-wife in his van, shot her on a country road, and left her body on the ground. On cross-examination, defense counsel elicited that Payne took this information to the Phelps County jailer in 1991 and requested a deal with "90-day shock" time in his own pending first-degree murder case. Payne subsequently pled guilty to second-degree murder and was sentenced to 15 years of imprisonment. The following colloquies and summations are taken from the appellate court's direct appeal opinion. Doc. [16-5] at 8-10:

> On redirect examination, the prosecutor asked Payne:
>
> Q. And you were sentenced to 15 years?
>
> A. Yes.
>
> Q. Is that right? Did that sentence have anything to do with the information provided on [Petitioner]?
>
> A. No.
>
> Q. All right. You didn't get - - did you get anything for the information provided on [Petitioner]?
>
> A. No, not nothing.

…

Q. All right. Did you ask [the jailer] to talk to the judge about [his request for 90-days of shock time]?

A. Yes.

Q. And for him to consider it?

A. Yes.

Q. And what did the judge do?

A. He never mentioned it to me. I don't know what - - [Defense Counsel]: Objection, calls for hearsay…. There's no record of what a judge did or didn't do in that situation. [Prosecutor]: Well, Judge,…she intimated that somehow his murder was reduced because of this, which wasn't the case. And – [Defense Counsel]: Objection, Judge, could we approach?

...

(Counsel approached the bench and the following proceedings were held:)

[Defense Counsel:] I'm objecting to the State getting up and testifying that there was not a deal. I'm simply asking this witness did he ask for a deal, and then sometime after he asked for a deal his case got reduced from a murder first to a murder second.

There's no record of whether it did or it didn't.  I'm just asking him, was he seeking a deal? Yes. And then ultimately was your case reduced? I never asked him if there was a deal or if this was part of the deal.  I'm just saying that's how - -

…

[Prosecutor]: That's obviously the implication you're making that his murder case was reduced after that, after he gave the information. Now I've established through him that that didn't happen.  And now what I'm asking is what happened to what he did request. And he knows that. He knows whether he got something.

The trial court overruled defense counsel's objection, finding the defense brought out the issue by alluding to Payne having received a deal.  Upon defense counsel's request, the court directed the prosecutor not to lead the witness.

Q. [Prosecutor]: All right. Do you know what the Judge did with your request for that time?

A. I don't know that he give [sic] me anything.

Q. He didn't give you anything?

A. Never mentioned it.

Q. Never got any deal. Is that fair?

A. That's fair.

Q. All right. As far as you know, did you ever get anything in return for the statement you gave about [Petitioner]?

A. No, sir.

Q. And your testimony here today, are you getting anything in exchange for this?

A. No, sir.

Q. All right. And your statements in the past, did you get anything in exchange for those?

A. No.

Q. [Defense counsel] asked you about not having a lot of detail about this murder that [Petitioner] told you about. Do you recall that?

A. Yeah.

Q. The information you had about the murder, where did you get that information from?

A. From him.

Q. That's your only source?

A. The only source I had.

During closing statements, defense counsel characterized Payne's testimony as "let's make a deal[,]" stating Payne was a snitch who wanted a deal for 90 days in jail on his first-degree murder case for providing information in Petitioner's case.  Defense counsel argued that after Payne provided information on Petitioner, Payne's first-degree murder charge was reduced to second-degree murder, and he received a 15-year sentence. Defense counsel also argued that Payne's testimony regarding Petitioner's alleged confession lacked specific details about the crime that were not already available through other sources. During the State's closing, the prosecutor stated Payne testified he did not receive anything in exchange for his testimony even though he hoped

the judge would consider his request.  In response to the defense's contention that Payne's testimony lacked detail, the prosecutor argued Payne was "not making anything up.  His only source, he testified…is [Petitioner]."

> **Ground 3: Petitioner claims the trial court erred in overruling his objection to the prosecutor's statement that there was "no deal" between the State and Payne during redirect examination because it bolstered Payne's credibility.**
>
> **Ground 4: Petitioner claims the trial court erred in allowing the prosecutor to use leading questions during redirect examination of Payne because it bolstered Payne's credibility.**

Prosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough unfairness to render a petitioner's conviction a denial of due process. *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002). To constitute misconduct, a prosecutor's remarks must have been improper and must have prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial. *Graves v. Ault*, 614 F.3d 501, 507 (8th Cir. 2010).

Here, the trial court overruled defense counsel's objection to the prosecutor's redirect examination of Payne, finding that defense counsel brought out the issue by alluding to the fact that Payne had received a deal. Nonetheless, the trial court directed the prosecutor not to ask Payne leading questions on the issue.  The  appellate court reviewed Petitioner's claims and found that Payne had already testified he did not receive a reduced sentence for his cooperation in Petitioner's case, any leading questions by the prosecutor on the same topic amounted to simply repeating Payne's testimony, and that the prosecutor's comments were accurate statements of the evidence. The appellate court ultimately determined that the prosecutor's remarks did not amount to prejudice, depriving Petitioner of a fair trial. The decision of the state court was neither contrary to, nor did it involve, an unreasonable application of clearly established federal law or result in a

decision that was based on an unreasonable determination of the facts given the evidence presented in the State court proceeding. Ground 3 and Ground 4 are denied.

> **Ground 5:  Petitioner claims the state court plainly erred in allowing the prosecutor to argue during closing arguments that Payne got nothing for his testimony and that Payne was not making anything up because the statements constituted the prosecutor's personal assurance Payne had not received a deal and bolstered Payne's credibility.**

Petitioner did not preserve this claim by failing to object to the alleged error at trial. The appellate court reviewed Petitioner's claim for plain error and denied it, finding that the prosecutor's statements during closing arguments regarding Payne not receiving a sentence reduction in exchange for cooperation was an accurate statement of the evidence, were supported by the evidence presented at trial, and that Petitioner failed to prove or otherwise establish there was any deal. *See* Doc. [16-5] at 11-12.

A state court's plain error review of a defaulted claim does not cure procedural default. *Clark*, 780 F.3d at 876–877. Petitioners claim may only be reviewed on the merits if he shows cause and prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has only provided bare assertions in his Petition, and therefore, has neither shown cause nor prejudice, or how failure to consider his claim would result in a fundamental miscarriage of justice. Petitioner's claim is procedurally defaulted. Ground 5 is denied.

> **Ground 8-2[5]: Petitioner claims that the post-conviction motion court erred in denying his Rule 29.15 motion by not finding trial counsel was ineffective for unreasonably failing to impeach Payne's credibility on cross-examination with additional evidence of his prior felony convictions.**

> **Ground 11: Petitioner claims that the post-conviction motion court erred in denying his Rule 29.15 motion finding that it was reasonable trial strategy for trial counsel to not impeach Payne with every prior conviction or every incident in which Payne sought leniency.**

---

[5] Ground 8 is divided into Ground 8-1 and Ground 8-2. *See* Doc. [1] at 11.

Although trial counsel impeached Payne with his murder conviction, Petitioner claims trial counsel should have impeached Payne with his other felony convictions. Trial counsel testified at the post-conviction evidentiary hearing that she had concerns about "verbally beating up" on an old man. Doc. [16-10] at 5.  At the time of trial, Payne was 73 years old and had a multitude of health issues.  He had undergone surgery to remove a tumor from under his brain, had difficulty walking (using a walker to shuffled across the courtroom), could not hear well, and could not read without glasses.  Trial counsel explained at the hearing that she was "concerned about the impression that [she] was kind of beating up verbally on this old man in front of the jury" and that "it felt like in the eyes of the jury … like [she] was beating up on this poor, semi-senile, old man." *Id*. at 6. The post-conviction motion court denied Petitioner's motion and Petitioner appealed.

The appellate court determined that trial counsel "exposed the most serious of Mr. Payne's infractions," and the decision to refrain from impeaching Payne with all of his felony convictions, at the risk of alienating the jury, was a reasonable strategic choice. *Id*. Further, the appellate court found that the evidence at trial showed that Payne sought to use Petitioner's alleged admissions in exchange for a more favorable disposition on his own charges, and that trial counsel extensively questioned Payne on this matter. Trial counsel explained that she focused on how that self-interest could have affected Payne's credibility. The appellate court found that counsel's "strategy to focus on Payne's alleged motive to fabricate [Cross's] admissions of guilt [was] not ineffective assistance of counsel" and that Petitioner's argument regarding whether trial counsel should have presented additional impeachment evidence "amounted to nothing more than second-guessing counsel's reasonable trial strategy." *Id*. at 6-7. The appellate court ultimately found that Petitioner failed to meet his burden to show that trial counsel's performance in this

regard was unreasonable, much less that a reasonable probability existed that the result of the proceeding would have been different if trial counsel had impeached Payne with his other convictions and attempts to make a deal with the prosecution.

Petitioner cannot satisfy the "doubly deferential" standard required to obtain habeas relief on his claims regarding impeachment of Payne's testimony. The appellate court correctly identified the *Strickland* legal standard governing Petitioner's grounds for relief and its application of the *Strickland* standard was not unreasonable; nor was its decision based on an unreasonable determination of the facts. Grounds 8-2 and Ground 11 are denied.

### C. Ground 6: Petitioner alleges that the trial court abused its discretion in overruling an objection to the testimony of Thomas Lortz at trial, wherein he attributed the statement that "some people get away with murder," to Petitioner.

Lortz and Petitioner had been good friends for approximately 35 years and talked about their divorces. Lortz testified at trial that he and Petitioner were at the Eagles Lodge approximately seven to ten days before Victim was killed. Lortz testified that Petitioner was complaining about the Victim, child support, and visitation.  Petitioner offered to kill Lortz's ex-wife if Lortz would kill Victim.  When Lortz told Petitioner he was not interested in having his ex-wife killed, Petitioner offered Lortz $3,000 to kill Victim.  Lortz told Petitioner he was not interested. Lortz also testified, over defense counsel's objection, that he and Petitioner were at the Eagles Lodge with a group of people one to two years after Victim's murder, and at one point in the conversation, Petitioner looked at Lortz, grinned, and said, "Some people can get away with murder." Doc. [16-5] at 3. Petitioner claimed on direct appeal that the trial court abused its discretion in overruling his objection to Lortz's testimony that Petitioner said "Some people can get away with murder," because it was irrelevant and prejudicial. Doc. [1] at 10.

The evidence indicated that Petitioner complained to Lortz about Victim, and he solicited Lortz to murder Victim approximately a week before Victim was killed. The appellate court denied the claim finding that, "It is reasonable to infer [Petitioner's] statement 'Some people can get away with murder' less than two years after Victim was murdered, made while looking and smiling directly at a man [Petitioner] had solicited to murder Victim, was made in reference to Victim." Doc. [16-5] at 15. Thus, the appellate court found that the testimony was logically relevant as it "tends to make [Petitioner's] murder of victim more probable," and was also legally relevant because, "once placed in context, the probative value of the statement was significant as an admission. While the statement was damaging to [Petitioner] as it tended to implicate him in the murder, the statement's probative value outweighs any prejudice." *Id*. at 15.

"In the habeas context, rules of evidence and trial procedure are usually matters of state law." *Bucklew v. Luebbers*, 436 F.3d, 1010, 1018 (8th Cir. 2006). "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, the admissibility of evidence at trial is ordinarily a matter of state law and "will not form the basis for federal habeas relief." *Turner v. Armontrout*, 845 F.2d 165, 169 (8th Cir. 1988) (citing *Manning-El v. Wyrick*, 738 F.2d 321, 322 (8th Cir.), *cert. denied* (1984)). Because the admissibility of evidence is a matter of state law, such issues are only considered in federal habeas when determining whether an "alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Fitzgerald v. Armontrout*, 963 F.2d 1062, 1064 (8th Cir. 1992); *see Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th Cir. 1993). Petitioner does not allege that the trial court's ruling regarding Lortz's testimony infringed on a specific constitutional protection. Further, Petitioner's bare assertions in his Petition

do not show how Lortz's testimony, found to be both legally and logically relevant, was so prejudicial as to be a denial of due process.

The decision of the state court was neither contrary to, nor did it involve an unreasonable application of clearly established federal law, or result in a decision that was based on an unreasonable determination of the facts given the evidence presented in the state court proceeding. Ground 6 is denied.

### D. Ground 7: Petitioner claims the trial court committed plain error in admitting three .22 caliber guns into evidence that police seized from him.

Prior to Victim's murder, Petitioner was known to conceal and carry a small .22 caliber semi-automatic pistol on his person, either in his boot or in a holster.  Victim was shot and killed with a .22 caliber firearm.  The bullet removed from Victim's body was a .22 caliber hollow point, copper jacketed round consistent with CCI .22 caliber ammunition. Hours after Victim's murder, Petitioner produced three guns to investigators for examination.  From his van, Petitioner retrieved a Winchester .22 caliber rifle loaded with one round of CCI .22 caliber hollow point, copper jacketed ammunition. Investigators also recovered a loose round of CCI .22 caliber hollow point, copper jacketed ammunition from the floorboard of the van. From his trailer, Petitioner produced a Mossberg .22 caliber rifle, and a Ruger .22 caliber revolver loaded with six rounds of CCI .22 caliber hollow point, copper jacketed ammunition.  Forensic evidence excluded the guns Petitioner produced to the authorities as being the murder weapon.

The three .22 caliber guns seized from Petitioner were admitted into evidence at trial. Petitioner did not object to the admission of the guns or the testimony concerning the weapons at trial. Petitioner claimed on appeal that the trial court erred in allowing the State to admit the guns into evidence because the admission of the guns amounted to manifest injustice, in that none of

the guns were the murder weapon and the evidence suggested to the jurors that Petitioner was violent and caused the jurors to fear and loathe him.  The appellate court reviewed Petitioner's claim for plain error and found that there was no indication in the record that the evidence was used to suggest Petitioner was violent or caused the jurors to fear or loathe him, and that the evidence was relevant and more probative then prejudicial.

A state court's plain error review of a defaulted claim does not cure procedural default. *Clark*, 780 F.3d at 876–877 (8th Cir. 2015). Petitioner's claim may only be reviewed on the merits if he shows cause and prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice. Petitioner has only provided bare assertions in his Petition, and therefore, has neither shown cause nor prejudice, or how failure to consider his claim would result in a fundamental miscarriage of justice. Petitioner's claim is procedurally defaulted. Ground 7 is denied.

**E.  Ground 8-1: Petitioner claims the trial court erred in admitting evidence that the state of Missouri had charged Petitioner and his wife, Becky Cross, with assaulting Victim.**

Before trial, the State filed a motion in limine seeking admission of certified court records establishing Petitioner and his wife, Becky Cross, were charged with assaulting Victim and her friend on June 24, 1990.  The State alleged the evidence was admissible to show Petitioner's motive for murdering Victim was, in part, to punish Victim for reporting the assault, to prevent Victim from testifying, and to avoid the prosecution of Petitioner and Becky Cross for the assault. After a hearing, the trial court granted the State's motion.  When the State sought to introduce the records at trial, defense counsel objected to their admission on the basis that Petitioner did not have notice of the assault charges and, therefore, the records lacked foundation and were irrelevant.  The trial court reversed its earlier ruling and required the State to lay additional foundation demonstrating

Petitioner received notice of the charges.  Petitioner subsequently withdrew his objection after learning his former attorneys on the assault case were expected to testify that they would not have entered their appearances and filed pleadings on Petitioner's behalf without having first discussed the charges with Petitioner. On direct appeal, the appellate court found that Petitioner's "act of withdrawing his objection to the admission of the exhibits into evidence amounts to an affirmative waiver of appellate review of the issue." Doc. [16-5] at 18. Although the appellate court found that Petitioner waived the alleged error, it reviewed Petitioner's claim for plain error and found that the evidence was admissible, as it was relevant to prove Petitioner's possible motive to murder Victim.

A state court's plain error review of a defaulted claim does not cure procedural default. *Clark*, 780 F.3d at 876–877. Petitioner's claim may only be reviewed on the merits if he shows cause and prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice. Petitioner has only provided bare assertions in his petition, and therefore, has neither shown cause nor prejudice, or how failure to consider his claim would result in a fundamental miscarriage of justice. Petitioner's claim is procedurally defaulted. Ground 8-1 is denied.

### F. Ground 9-1[6]: Petitioner claims that the Rule 29.15 motion court erred in not finding trial counsel was ineffective for failing to call Bobby Sharp as a rebuttal witness.

Petitioner claims trial counsel was ineffective for failing to call Sharp to rebut Smith's testimony about Petitioner's conspiracy to murder his ex-wife. Petitioner's trial counsel did not trust Sharp to testify favorably for Petitioner. Sharp was a convicted rapist, there was concern that the jury would not believe Sharp, and his testimony could in fact hurt the defense. Doc. [16-10] at 9-10. Despite these concerns, trial counsel prepped Sharp to be a witness. However, trial counsel

---

[6] Ground 9 is divided into Ground 9-1 and Ground 9-2. *See* Doc. [1] at 11-12.

became aware that if Sharp testified, the State planned to call David Dowling as a witness. Dowling would have testified that Sharp admitted to him that he was involved in the conspiracy. *Id.* Further, Petitioner was made aware of trial counsel's concerns regarding Sharp, and Petitioner agreed with the strategy. *Id.*

After reviewing trial counsel's concerns regarding Sharp's potential testimony, the appellate court ultimately found that Petitioner failed to meet his burden to show that trial counsel was unreasonable in failing to call Sharp as a witness, much less that a reasonable probability existed that the result of the proceeding would have been different if trial counsel had called Sharp. *See Griffin v. Delo*, 33 F.3d 895, 901 (8th Cir. 1994) ("When a claim for ineffective assistance of counsel is alleged on the basis of failing to investigate or act, the reasonableness of the nonfeasance must be assessed in light of all circumstances").

Petitioner cannot satisfy the "doubly deferential" standard required to obtain habeas relief on his claims regarding Sharp's testimony. The appellate court correctly identified the *Strickland* legal standard governing Petitioner's ground for relief and its application of the *Strickland* standard was not unreasonable; nor was its decision was not based on an unreasonable determination of the facts. Grounds 9-1 is denied.

### G. Ground 9-2: Petitioner claims that the Rule 29.15 motion court erred in not finding that trial counsel was ineffective for failing to call Terry Duncan as a rebuttal witness.

Petitioner claims trial counsel was ineffective for failing to call Duncan to refute Jolliff's testimony that a year before the victim's shooting death, Petitioner displayed a .22 caliber handgun, which was the same caliber handgun as the one used in the shooting. Petitioner's counsel decided not to call Duncan to testify because Jolliff omitted what counsel believed was the most prejudicial aspect of his expected testimony—that Petitioner had offered Jolliff money

to kill the Victim at the same time he displayed the gun. Doc [16-10] at 10-11. Instead, Jolliff testified that Petitioner had taken a gun and put it on the table for Jolliff's potential use in self-defense. *Id.* Given this testimony, counsel had serious concerns about calling Duncan to refute that Petitioner had displayed a gun. *Id.* Trial counsel believed the issue of Petitioner soliciting murder was far more incriminating than the fact that Petitioner had a .22 caliber gun, because the solicitation was specifically tied to the Victim. *Id.*

The appellate court found that trial counsel's decision to forego calling Duncan and avoiding the risk of him disclosing damaging details was "well within the realm of reasonable trial strategy." *Id.* at 11.  *See Griffin*, 33 F.3d at 901. ("When a claim for ineffective assistance of counsel is alleged on the basis of failing to investigate or act, the reasonableness of the nonfeasance must be assessed in light of all circumstances"). After reviewing trial counsel's concerns regarding Duncan's potential testimony, the appellate court ultimately found that Petitioner failed to meet his burden to show that trial counsel's performance in this regard was unreasonable, much less that a reasonable probability existed that the result of the proceeding would have been different if Duncan had testified.

Petitioner cannot satisfy the "doubly deferential" standard required to obtain habeas relief on his claims regarding Duncan's testimony. The appellate court correctly identified the *Strickland* legal standard governing Petitioner's ground for relief and its application of the *Strickland* standard was not unreasonable; nor was its decision based on an unreasonable determination of the facts. Ground 9-2 is denied.

### H.  Ground 10: Petitioner claims that the Rule 29.15 motion court erred in not finding trial counsel was ineffective for failing to call Phelps County Jail Supervisor, John Arnold, as a rebuttal witness.

Petitioner claims trial counsel was ineffective for failing to call Phelps County Jail Supervisor, John Arnold, to refute Payne's testimony that, as a trustee, he was granted leave from jail to go on excursions. The appellate court found that "[t]he desired testimony, on whether Mr. Payne was able to leave the jail, was impeachment on a collateral issue, not directly related to [Petitioner] or whether [Petitioner] confessed to Payne inside the jail;" but, if called to testify, Arnold could have corroborated Payne's testimony that Payne was indeed a trustee, and he would have had access to Petitioner inside the jail, showing that it was possible for Petitioner to have confessed to Payne. Doc. [16-10] at 12. Trial counsel also expressed concern that the State would have elicited testimony from Arnold that he believed Payne, when Payne said that Petitioner admitted to killing the Victim.

The appellate court ultimately found that Arnold's testimony would have bolstered Payne's credibility on the material issue of whether Petitioner admitted to murdering the victim, as such Petitioner failed to meet his burden to show that trial counsel's performance in this regard was unreasonable, much less that a reasonable probability existed that the result of the proceeding would have been different if trial counsel had called Arnold to testify.

Petitioner cannot satisfy the "doubly deferential" standard required to obtain habeas relief on his claims regarding Duncan's testimony. The appellate court correctly identified the *Strickland* legal standard governing Petitioner's ground for relief and its application of the *Strickland* standard was not unreasonable; nor was its decision based on an unreasonable determination of the facts. Ground 10 is denied.

**I. Grounds 1 and 12 concerning Petitioner's claims that he is "factually innocent" based on newly-discovered evidence and the federal prosecutor that served as a special prosecuting attorney in the case "framed him."**

Petitioner's Grounds 1 and 12 appear to be based upon the newly-discovered evidence claim he brought in a motion for remand during his post-conviction appeal. *Id*. at 2. Petitioner asked the appellate court to remand his pending post-conviction appeal to allow the post-conviction motion court to hear and consider newly-discovered evidence in determining the merit of his post-conviction motion then pending on appeal. Petitioner's newly-discovered evidence consisted of affidavits from five individuals: Donald Young, Melvin Leroy Tyler, Roger Merchant, Ronald Lewis, and Angela K. Lewis. Doc. [1-1] at 335-342. Petitioner claimed the evidence impeached the credibility of two of the State's witnesses and would have produced a different result if it had been presented to the jury. Petitioner acknowledged that a claim of newly-discovered evidence is not cognizable in a Rule 29.15 proceeding. *Wilson v. State*, 813 S.W.2d 833, 834-35 (Mo. banc 1991). Nevertheless, he urged the appellate court to remand pursuant to their "inherent powers." Doc. [16-10] at 2.

The appellate court noted that the cases Petitioner cited in support of his argument were cases that had been on direct appeal when they were remanded to the trial court. The appellate court denied Petitioner's motion. The appellate court mentioned that although newly-discovered evidence is not cognizable in a post-conviction action, an exception is allowed when it is later discovered that the State knowingly used perjured testimony.[7] The appellate court went on to find that the exception did not apply and Petitioner did not assert such a claim.

Petitioner appears to seek review of Grounds 1 and 12 under the fundamental miscarriage of justice exception to procedural default. To assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is

---

[7] *See Ferguson v. State*, 325 S.W.3d 400, 406 (Mo. App. W.D. 2010).

innocent of the crime for which he was convicted." *Murphy*, 652 F.3d at 850. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner cannot meet the high standard of an actual-innocence gateway claim. He appears to claim he was framed by state officials who were "aided and abetted" by the special prosecuting attorney, and set forth a litany of accusations that the special prosecuting attorney made deals with witnesses.[8] Petitioner provided the affidavits he attached to his motion to remand in the appellate court, presumably as the newly-discovered evidence he asks the Court to consider. The affidavits he provided call in to question the veracity of State witnesses, Payne and Smith, nothing more. This evidence does not affirmatively demonstrate that he is innocent.

Petitioner has not presented the Court with newly-discovered evidence that affirmatively demonstrates his innocence. Petitioner has not shown that it is more likely than not that no reasonable juror would have convicted him based upon the affidavits or his various unsubstantiated claims that the special prosecuting attorney "framed him." The Court denies Grounds 1 and 12.

## CONCLUSION

Accordingly, all of Petitioner's Grounds for relief are denied,

**IT IS HEREBY ORDERED** that the Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, Doc. [1], is **DENIED**.

**IT IS FURTHER ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a certificate of appealability.

---

[8] The special prosecuting attorney appointed to litigate Petitioner's case was also a federal prosecutor at the time of Petitioner's trial.

A separate judgment in accordance with the Memorandum and Order is entered this same date.

Dated this 31st of March, 2023

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE